Ronald A. Valenzuela (Bar No. 210025)
ronald.valenzuela@Lathropgpm.com
LATHROP GPM LLP
2049 Century Park East, Suite 3500S
Los Angeles, California, 90067-1623
Telephone:   310.789.4600
Facsimile:   310.789.4601

Attorney for Plaintiff The Roman Catholic
Bishop of Orange

*Additional Counsel on Signature Page*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ROMAN CATHOLIC BISHOP OF ORANGE, a California Corporation Sole,<br><br>Plaintiff,<br><br>vs.<br><br>ALLIANZ UNDERWRITERS INSURANCE COMPANY f/k/a ALLIANZ UNDERWRITERS, INC., an Illinois Corporation, and CONTINENTAL CASUALTY COMPANY, an Illinois Corporation,<br><br>Defendants. | CASE NO.  2:24-cv-09612<br><br>**COMPLAINT FOR:**<br><br>**(1)  DECLARATORY RELIEF; and**<br><br>**(2)  BREACH OF CONTRACT.**<br><br>**JURY DEMAND**<br><br>**(28 U.S.C. § 2201 AND 28 U.S.C. § 1332)** |

Plaintiff The Roman Catholic Bishop of Orange ("RCBO"), alleges against Defendants Allianz Underwriters Insurance Company f/k/a Allianz Underwriters, Inc. ("Allianz") and Continental Casualty Company ("Continental") (collectively, the "Insurers") as follows:

LATHROP GPM LLP
ATTORNEYS AT LAW

COMPLAINT

## NATURE OF THE ACTION

1. This is an insurance coverage action for declaratory relief and breach of contract brought by policyholder RCBO against two of its higher-layer excess insurers, Allianz and Continental, with respect to hundreds of claims against RCBO for "personal injury" for alleged childhood sexual assault.

2. RCBO brings this action seeking a declaration that the insurance policies issued by the Insurers to RCBO do not contain an annual aggregate limit of liability for sexual molestation claims. RCBO also seeks a declaration that the claims asserted in the underlying sexual abuse lawsuits constitute "occurrences" under the Insurers' respective policies.

3. Finally, this action also seeks damages for Allianz's breach of its insurance policies for refusing to pay indemnity costs up to the full policy limits to settle an underlying sexual abuse claim.

## PARTIES, JURISDICTION, & VENUE

4. Plaintiff RCBO is a California corporation sole whose principal place of business is in California. For purposes of diversity jurisdiction, Plaintiff is a citizen of the State of California.

5. Defendant Allianz is an Illinois corporation with its principal place of business in Chicago, Illinois. Accordingly, Allianz is deemed a citizen of the State of Illinois for diversity jurisdiction.

6. Defendant Continental is an Illinois corporation with its principal place of business in Chicago, Illinois. For purposes of diversity jurisdiction, Continental is a citizen of the State of Illinois.

7. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. The Court has original jurisdiction under 28 U.S.C. 2201(a) because this matter presents an actual controversy between RCBO and the Insurers. RCBO claims

that the Insurers have a duty to defend and, if necessary, indemnify RCBO under their respective policies in connection with the underlying childhood sex abuse lawsuits. The Insurers deny that they have a duty to defend or indemnity RCBO.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE JOHN OC-5 DOE LAWSUIT

10. On March 3, 2020, plaintiff John OC-5 DOE filed a lawsuit against RCBO and the Roman Catholic Archdiocese of Los Angeles in Orange County Superior Court (the "John OC-5 DOE Lawsuit") seeking to impose liability for alleged molestation by Father Eleuterio Ramos ("Ramos") and Father Siegfried Widera ("Widera").

11. The John OC-5 DOE Lawsuit was consolidated with a Judicial Council Coordination Proceeding in Los Angeles County Superior Court bearing Case No. JCCP 5101 ("Southern California Clergy Cases"), which currently includes over 200 active cases in which plaintiffs seek relief against RCBO for alleged molestation committed when they were minors.

12. The alleged abuse of John OC-5 DOE by Ramos was alleged to have occurred during the Allianz and Continental policy periods.

13. John OC-5 DOE alleged that RCBO knew or had reason to know that Ramos allegedly posed a risk of childhood sexual assault to minor children in the care, custody, and control of the RCBO, including John OC-5 DOE.

14. The John OC-5 DOE Lawsuit was settled prior to trial in December 2023.

## RCBO'S INSURANCE POLICIES

15. From 1976 to 1984, RCBO was insured under the following primary and excess liability insurance policies:

| Policy Number and Effective Dates | Insurer | Layer |
|---|---|---|
| Policy No. 05 AL 802303 CMA 06/18/1976 – 06/18/1977 | Aetna Casualty and Surety Company | Primary |
| Policy No. 05 XS 802303 06/18/1976 – 06/18/1977 | Aetna Casualty and Surety Company | First-Layer Excess |
| Policy No. 13548 06/18/1976 – 06/18/1977 | Stonewall Insurance Company | Second-Layer Excess |
| Policy No. 05 AL 802303 CMA 06/18/1977 – 06/18/1978 | Aetna Casualty and Surety Company | Primary |
| Policy No. 05 XS 802303 06/18/1977 – 06/18/1978 | Aetna Casualty and Surety Company | First-Layer Excess |
| Policy No. AEL 050384 06/18/1977 – 06/18/1978 | Associated International Insurance Company | Umbrella |
| Policy No. 05 AL 197484 CCA 06/18/1978 – 06/18/1979 | Aetna Casualty and Surety Company | Primary |
| Policy No. Unknown 06/18/1978 – 06/18/1979 | Aetna Casualty and Surety Company | First-Layer Excess |
| Policy No. AEL 050384 06/18/1978 – 06/18/1979 | Associated International Insurance Company | Umbrella |
| Policy No. 05 SM 93276 FCA 06/18/79 – 06/18/1980 | Aetna Casualty and Surety Company | Primary |
| Policy No. 05 XS 5502WCA 06/18/79 – 06/18/80 | Aetna Casualty and Surety Company | First-Layer Excess |
| Policy No. AEL 050384 06/18/1979 – 06/18/1980 | Associated International Insurance Company | Umbrella |
| Policy No. AU5003051 06/18/1979 – 06/18/1980 | Allianz | Second-Layer Excess |
| Policy No. RDX 143-36-23 06/18/1979 – 06/18/1980 | Continental | Third-Layer Excess |
| Policy No. 05 SM 105430 06/18/80 – 06/18/1981 | Aetna Casualty and Surety Company | Primary |
| Policy No. 05 XS 30639WCA 06/18/80 – 06/18/81 | Aetna Casualty and Surety Company | First-Layer Excess |
| Policy No. AEL 050384 06/18/1980 – 06/18/1981 | Associated International Insurance Company | Umbrella |
| Policy No. AUX5200112 06/18/1980 – 06/18/1981 | Allianz | Second-Layer Excess |
| Policy No. RDX 178-76-10 06/18/1980 – 06/18/1981 | Continental | Third-Layer Excess |

LATHROP GPM LLP
ATTORNEYS AT LAW
CHICAGO

4

| Policy No. 05FP218350 06/18/1981 – 07/01/1981 | Aetna Casualty and Surety Company | Primary |
|---|---|---|
| Policy No. 05FP714221 07/01/1981 – 07/21/1981 | Aetna Casualty and Surety Company | Primary |
| Policy No. 291704553 07/21/1981 – 07/01/1982 | Centennial Insurance Company | Primary |
| Policy No. JU 835-8295 06/18/1981 – 07/01/1982 | Industrial Underwriters Insurance Company | Umbrella |
| Policy No. 291704553 07/01/1982 – 07/01/1983 | Centennial Insurance Company | Primary |
| Policy No. JU 835-8295 07/01/1982 – 07/01/1983 | Industrial Underwriters Insurance Company | Umbrella |
| Policy No. 291704553 07/01/1983 – 07/01/1984 | Centennial Insurance Company | Primary |
| Policy No. JU 835-8295 07/01/1983 – 07/01/1984 | Industrial Underwriters Insurance Company | Umbrella |

**The Aetna Primary and First-Layer Excess Policies (1976-1981)**

16.    The Aetna Casualty and Surety Company ("Aetna") issued RCBO several primary layer general liability policies, including the following: (a) Policy No. 05 AL 802303 CMA for the policy period of June 18, 1976 to June 18, 1977; (b) Policy No. 05 AL 802303 CMA for the policy period of June 18, 1977 to June 18, 1978; (c) Policy No. 05 AL 197484 CCA for the policy period of June 18, 1978 to June 18, 1979; (d) Policy No. 05 SM 93276 FCA for the policy period of June 18, 1979 to June 18, 1980; (e) Policy No. 05 SM 105430 for the policy period of June 18, 1980 to June 18, 1981; (f) Policy No. 05FP218350 for the policy period of June 18, 1981 to July 1, 1981; and (g) Policy No. 05FP714221 for the policy period of July 1, 1981 to July 21, 1981 (collectively, the "Aetna Primary Policies").

17.    The Aetna Primary Policies provide $500,000 per occurrence limits of liability.

18.    Aetna also issued the following first-layer excess general liability insurance policies to RCBO: (a) Policy No. 05 XS 802303 for the policy period of June 18, 1976 to June 18, 1977 (the "1976-1977 Aetna Excess Policy"); (b) Policy

No. 05 XS 802303 for the policy period of June 18, 1977 to June 18, 1978 (the "1977-1978 Aetna Excess Policy"); (c) a policy (Policy No. unknown at this time) for the policy period of June 18, 1978 to June 18, 1979 (the 1978-1979 Aetna Excess Policy");[1] (d) Policy No. 05 XS 5502WCA for the policy period of June 18, 1979 to June 18, 1980 (the "1979-1980 Aetna Excess Policy"); and (e) Policy No. 05 XS 30639WCA for the policy period of June 18, 1980 to June 18, 1981 (the 1980-1981 Aetna Excess Policy") (collectively, the "Aetna Excess Policies"). A true and correct copy of the best records of the Aetna Excess Policies from RCBO's records are attached in ascending policy year as Exhibits 1-5.

19. The Aetna Excess Policies provide $1,000,000 per occurrence limits of liability in excess of the correlating Aetna Primary Policies issued between June 18, 1976 and June 18, 1981.

20. The 1976-1977 Aetna Excess Policy, the 1977-1978 Aetna Excess Policy, the 1978-1979 Aetna Excess Policy, and the 1980-1981 Aetna Excess Policy each provides that "[r]egardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain injury or damage, or (3) claims made or suits brought on account of personal injury, property damage or advertising offense, the company's liability for ultimate net loss, including ultimate net loss for care and loss of services, resulting from any one occurrence shall be limited to the amount stated in Section 1 as applicable to 'each occurrence'; provided, however, that the company's liability shall be further limited to the amount stated in Section 1 as 'aggregate annual' with respect to all ultimate net loss, including net loss for care and loss of services, because of personal injury or property damage which occurs during each annual period while this policy is in force commencing from its effective date, and arises out

_____

[1] Travelers has only provided certain pages of the 1978-1979 Aetna Excess Policy, and as such, the page with the policy number has purportedly not been located at this time.

of (1) the products hazard or the completed operations hazard or (2) occupational disease of employees of the insured, such aggregate limit to apply separately to (1) and (2)." Exhibit 1, Limits of Liability § 4.1; Exhibit 2, Limits of Liability § 4.1.

21. While Aetna has not provided a complete copy of the 1979-80 Aetna Excess Policy, Aetna has indicated that the 1979-80 Aetna Excess Policy contains the same limitation of liability language quoted in Paragraph 19 above.

22. The Aetna Primary and Excess Policies do not contain an aggregate limit for general liability claims, such as the sexual molestation claims alleged in the John OC-5 DOE Lawsuit.

### The Stonewall Excess Umbrella Policy (1976-1977)

23. On or about July 29, 1976, Stonewall Insurance Company ("Stonewall") issued an excess umbrella insurance policy to RCBO with the Policy No. 13548 for a policy period of June 18, 1976 to June 18, 1977 (the "Stonewall Excess Policy"). A true and correct copy of the Stonewall Excess Policy from RCBO's records is attached as Exhibit 6.

24. The Stonewall Excess Policy provides an annual $4,000,000 per occurrence limit of liability excess of the 1976-1977 Aetna First-Layer Excess Policy. *See* Exhibit 6 at Declarations, Endorsement No. #2.

25. The Stonewall Excess Policy states that "[t]he Insurance afforded by this policy shall follow that of the Underlying Insurance [the 1976-1977 Aetna First-Layer Policy]," subject to specifically enumerated exceptions. *Id.*, Policy of Excess Insurance § C.

26. The Stonewall Excess Policy is silent as to the aggregate limits of liability and therefore follows § 4.1 of the 1976-1977 Aetna First-Layer Excess Policy in regard to the aggregate limits of liability.

### The Associated Excess/Umbrella Policy (1977-1981)

27. On or about July 14, 1977, Associated International Insurance Company ("Associated") issued an excess/umbrella liability policy to RCBO with Policy No.

7

AEL 050384 (the "Associated Excess Policy").

28.    The Associated Excess Policy had an initial policy period of June 18, 1977 through June 18, 1978, but was extended for three consecutive annual periods for (a) June 18, 1978 to June 18, 1979, (b) June 18, 1979 to June 18, 1980, and finally (c) June 18, 1980 to June 18, 1981. A true and correct copy of the Associated Excess Policy from RCBO's records is attached as Exhibit 7.

29.    The Associated Excess Policy follows form to the Aetna Excess Policies and provides an annual limit of liability of $4,000,000 per occurrence in excess of the $1,000,000 per occurrence limit provided in the Aetna Excess Policies.

30.    The Associated Excess Policy provides coverage for and indemnifies the "Assured [the RCBO] for all sums which the Assured shall be obligated to pay by reasons of the liability (a) imposed upon the Assured by law; (b) or assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner, or employee of the Named Assured, while acting in his capacity as such, for damages, direct or consequential and expenses on account of: (i) Personal Injuries, including death at any time resulting therefrom; (ii) Property Damage; (iii) Advertising Liability, caused by or arising out of each occurrence happening anywhere in the World, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated in Item 2 of the Declarations and issued by [Aetna]…." *Id.*, Insuring Agreements, § 1.

31.    The "Underlying Umbrella Policies stated in Item 2 of the Declarations" is the 1976-1977 Aetna Excess Policy. *Id.*, Declarations, Item 2.

32.    The 1976-1977 Aetna Excess Policy defines "occurrence" as an "accident, including continuous or repeated exposure to conditions, which results in personal injury, property damage or advertising offense which is neither expected nor intended from the standpoint of the insured." Exhibit 1, § 5.9.

33.    The 1976-1977 Aetna Excess Policy defines "personal injury" as "bodily injury, shock, mental anguish, sickness or disease, including death at any time

LATHROP GPM LLP
ATTORNEYS AT LAW
CHICAGO

resulting therefrom; injury arising out of false arrest, detention or imprisonment, malicious prosecution, wrongful entry or eviction or other invasion of the right of privacy occupancy, humiliation or racial or religious discrimination (unless committed by or at the direction of the insured, or unless insurance therefore is prohibited by law); and, except with respect to injury occurring in the course of the named insured's advertising activities, injury arising out of the publication or utterance of a libel or slander or of other defamatory or disparaging material, or of a publication of utterance in violation of an individual's right to privacy." *Id.*, § 5.10.

34. The Associated Excess Policy provides that liability only attached after the underlying insurers "have paid or have been held liable to pay the full amount of their respective Ultimate Net Loss Liability as follows: [$1,000,000] Ultimate Net Loss in respect of each occurrence, but [$1,000,000] in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured." *Id.*, Insuring Agreements, § 2.

35. There is no general aggregate limit in the Associated Excess Policy applicable to sexual molestation claims.

### The Allianz Excess Policies (1979-1981)

36. Allianz issued the following excess insurance policies to the RCBO: (a) Policy No. AU5003051 for the policy period of June 18, 1979 to June 18, 1980 (the "1979-1980 Allianz Excess Policy"), and (b) Policy No. AUX5200112 for the policy period of June 18, 1980 to June 18, 1981 (the "1980-1981 Allianz Excess Policy") (collectively, the "Allianz Excess Policies"). True and correct best copies of the 1979-1980 Allianz Excess Policy and 1980-1981 Allianz Excess Policy are attached as Exhibit 8 and Exhibit 9, respectively.

37. The 1979-1980 Allianz Excess Policy provides annual $5,000,000 per occurrence limits of liability in excess of Associated Excess Policy and the 1979-1980 Aetna Excess Policy. Exhibit 8, Declarations, Items 2 and 5.

38.    The 1980-1981 Allianz Excess Policy provides annual $5,000,000 per occurrence limits of liability in excess of the Associated Excess Policy and the 1980-1981 Aetna First-Layer Excess Policy. Exhibit 9, Declarations, Items 2 and 5.

39.    The Allianz Excess Policies are primarily follow-form excess policies. Exhibit 8, Conditions § 2; Exhibit 9, Conditions § 2.

40.    The Allianz Excess Policies are "subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Item 2 of the Declaration….." Exhibit 8, Conditions § 2; Exhibit 9, Conditions § 2.

41.    The Underlying Umbrella Policies stated in Item 2 of the Declaration for the 1979-1980 Allianz Excess Policy are the Associated Excess Policy and the 1979-1980 Aetna First-Layer Excess Policy. Exhibit 8, Declarations, Item 2.

42.    The Underlying Umbrella Policies stated in Item 2 of the Declaration for the 1980-1981 Allianz Excess Policy are the Associated Excess Policy and the 1980-1981 Aetna First-Layer Excess Policy. Exhibit 9, Declarations, Item 2.

43.    The Allianz Excess Policies contain the following limits of liability provision:

> "It is expressly agreed that liability shall attach to [Allianz] only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective Ultimate Net Loss Liability as follows: -- $[5,000,000] Ultimate Net Loss in respect of each occurrence, but $[5,000,000] in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury…by Occupational Disease sustained by any employees of the Assured [RCBO], and [Allianz] shall then be liable to pay only the excess thereof up to a further $[5,000,000] Ultimate Net Loss in respect of each occurrence—subject to a limit of $[5,000,000] in the aggregate for each annual period during the currency of

this Policy, separately in respect of Products Liability and separately in respect of Personal Injury…by Occupational Disease sustained by any employees of the Assured [RCBO]."

Exhibit 8, Insuring Agreement § 2; Exhibit 9, Insuring Agreement § 2.

### The Continental Excess Policies (1979-1981)

44. Continental issued the following excess insurance policies to RCBO: (a) Policy No. RDX 143-36-23 for the policy period of June 18, 1979 to June 18, 1980 (the "1979-1980 Continental Excess Policy") and (b) Policy No. RDX 178-76-10 for the policy period of June 18, 1980 to June 18, 1981 (the "1980-1981 Continental Excess Policy") (collectively, the "Continental Excess Policies"). A true and correct copy of the portions of the 1980-1981 Continental Excess Policy is attached as Exhibit 10.

45. While Continental has not yet provided a complete copy of the Continental Excess Policies, the policy pages provided to date show the Continental Excess Policies are follow form excess policies and each is believed to use the same coverage forms. Exhibit 10, Declarations.

46. Upon information and belief, the 1979-1980 Continental Excess Policy provides an annual $5,000,000 per occurrence limit of liability in excess of the 1979-1980 Allianz Excess Policy, the Associated Excess Policy, and the 1979-1980 Aetna First-Layer Excess Policy.

47. The 1980-1981 Continental Excess Policy provides an annual $5,000,000 per occurrence limit of liability in excess of the 1980-1981 Allianz Excess Policy, the Associated Excess Policy, and the 1980-1981 Aetna First-Layer Excess Policy. Exhibit 10, Declarations.

48. According to Continental, each of the Continental Excess Policies provides that the "provisions of the immediate underlying policy are incorporated as a part of this policy except for any obligation to investigate and defend and pay for costs and expenses incident to the same, the amount of the limits of liability, any

LATHROP GPM LLP
ATTORNEYS AT LAW
CHICAGO

11

COMPLAINT

'other insurance' provision and any other provisions therein which are inconsistent with the provisions of this policy."

49.    The immediate underlying policy for the 1979-1980 Continental Excess Policy is the 1979-1980 Allianz Excess Policy.

50.    The immediate underlying policy for the 1980-1981 Continental Excess Policy is the 1980-1981 Allianz Excess Policy.

### The Centennial Primary Policy (1981-1984)

51.    Centennial Insurance Company ("Centennial") issued a primary general liability insurance policy, Policy No. 291704553, to RCBO for the policy period of July 21, 1981 to July 1, 1984 (the "Centennial Policy").

52.    The Centennial Policy provides an annual $500,000 per occurrence limit of liability.

53.    Centennial has been liquidated in accordance with New York law.

### The Industrial Umbrella Policies (1981-1984)

54.    Industrial Underwriters Insurance Company ("Industrial") issued the following commercial umbrella policies to RCBO: (a) Policy No. JU 835-8295 for the policy period of June 18, 1981 to July 1, 1982 (the "1981-1982 Industrial Policy"); (b) Policy No. JU 835-8295 for the policy period of July 1, 1982 to July 1, 1983 (the "1982-1983 Industrial Policy"); (c) Policy No. JU 835-8295 for the policy period of July 1, 1983 to July 1, 1984 (the "1983-1984 Industrial Policy") (collectively, the "Industrial Umbrella Policies").

55.    The 1981-1982 Industrial Umbrella Policy identifies Aetna Primary Policy No. 05FP218350, effective June 18, 1981 to July 1, 1981, Aetna Primary Policy No. 05FP714221, effective July 1, 1981 to July 21, 1981, and the Centennial Policy in its schedule of underlying insurance.

56.    The 1981-1982 Industrial Policy provides annual $10,000,000 per occurrence limits of liability in excess of the underlying Aetna and Centennial primary policies.

57.    The 1982-1983 Industrial Umbrella Policy identifies the Centennial Policy in its schedule of underlying insurance.

58.    The 1982-1983 Industrial Policy and the 1983-1984 Industrial Policy provide annual $20,000,000 per occurrence limits of liability in excess of the primary layer of coverage provided by the Centennial Policy.

59.    The Industrial Umbrella Policies each provide an "[a]ggregate limit for each annual period with respect to Products hazard."

60.    None of the Industrial Umbrella Policies contain an aggregate limit applicable to sexual abuse claims.

## THE COVERAGE DISPUTES WITH ASSOCIATED AND INDUSTRIAL

### The Coverage Dispute with Associated

61.    On December 22, 2023, Evanston Insurance Company, as the successor to Associated ("Evanston"), filed a lawsuit against RCBO captioned *Evanston Insurance Company v. The Roman Catholic Bishop of Orange*, Case No. 8:23-cv-02446 MRA-ADSx (the "*Evanston* Lawsuit"), seeking a declaration that a $4,000,000 annual aggregate applies to all past and present sexual molestation claims asserted against RCBO for each year the Associated Excess Policy was in effect.  Evanston further contends that there are only $2,585,750 in annual limits available for each of the Associated Excess Policy years.

62.     Evanston also seeks declarations that the molestation claims asserted against RCBO are not covered by the Associated Excess Policy and seeks reimbursement of costs Evanston has paid in connection with those claims to the extent they are not covered by the Associated Excess Policy.

63.    Evanston has taken the position that there is a $4,000,000 annual aggregate limit under the Associated Excess Policy for the sexual molestation claims asserted against RCBO.

64.    RCBO disputes this position and filed counterclaims for breach of contract and declaratory relief seeking to hold that there are no aggregate limits

LATHROP GPM LLP
ATTORNEYS AT LAW
CHICAGO

13

COMPLAINT

applicable to sexual abuse claims.

65. A California appellate court in *Garamendi v. Mission Ins. Co.*, 131 Cal.App.4th 30, 47 (2005) interpreted a policy that contained a similar aggregate limits provision found in the Associated Excess Policy and the Allianz Excess Policies (and likely found in the Continental Policies) and held that "the provision at issue strikes us as not just ambiguous, but nearly incoherent."

66. While the court in *Garamendi* ultimately found the policyholder benefitted from a construction that aggregate limits applied, as it required an excess insurer to respond once those aggregate limits were exhausted, the court indicated that the decision was based on the circumstances of that case and to "protect the reasonable expectations of the insured."

67. The policies underlying the Associated Excess Policies, the Allianz Excess Policies and Continental Excess Policies above the Associated Excess Policies, and the primary and excess policies issued to RCBO in the years directly preceding and directly following those Policies do not contain aggregate limits for general liability claims, including sexual molestation claims.

68. Prior to 1986, primary and excess general liability policies did not typically contain aggregate limits for general liability claims.

69. In November 1986, the United States General Accounting Office ("GAO") published a report that confirmed no such general aggregate limits were included for any risks other than "bodily injury and property damage arising from products and completed operations." A true and correct copy of the GAO's report is attached as Exhibit 11.

70. Specifically, the GAO report stated that "[w]hile the previous CGL occurrence-based form included limits per individual occurrence for CGL risks, it applies aggregate limits of liability only to risks involving bodily injury and property damage arising from products and completed operations. It did not place aggregate limits on any other risks . . . ." *Id.* at 17.

71. Starting in 1986, according to the GAO, "the new CGL [forms] applies aggregate dollar limits to all risks, including those to which it did not apply in the past." *Id.*

72. Similarly, Restatement of the Law of Liability Insurance provides that "for much of the 20th century it was common for general liability policies to have an aggregate limit for products liability claims but not for other kinds of claims." Restatement of the Law of Liability Insurance § 37 cmt. b (Am. Law Inst. 2019).

73. The Associated Excess Policies (like the Allianz Excess Policies and Continental Excess Policies) do not contain general aggregate limits that apply to sexual molestation claims.

## The Coverage Dispute with Industrial

74. On July 11, 2024, another one of RCBO's insurers, Westchester Fire Insurance Company, as successor in interest to Industrial Underwriters Insurance Company (collectively, "Westchester"), brought a lawsuit against RCBO captioned *Westchester Fire Insurance Company v. The Roman Catholic Bishop of Orange*, originally as Case No. 8:24-cv-01539-PA-DFM and later assigned Case No. 8:24-cv-01539 MRA (ADSx) (the "*Westchester* Lawsuit"), seeking declarations that it has no duty to defend or indemnify RCBO with respect to the sexual abuse claims until the limits of the underlying Centennial Policies are exhausted and seeking to recoup defense costs associated with those claims.

75. On September 26, 2024, RCBO filed its Answer to Westchester's Complaint, Affirmative Defenses and Counterclaims for breach of contract, declaratory judgment, bad faith, and violations of California's Unfair Competition Law.

76. Also on September 26, 2024, RCBO filed a Notice of Related Cases in the *Evanston* and *Westchester* Lawsuits.

77. On October 17, 2024, the Court designated the *Evanston* and *Westchester* Lawsuits as related and reassigned the *Westchester* Lawsuit to United

States District Judge Moníca Ramírez Almadani.

## COUNT I:

### Declaratory Judgment Against Allianz

### (No Aggregate – Southern California Clergy Cases)

78. RCBO re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

79. Allianz has taken the position that each of its policies contain a $5,000,000 annual aggregate limit applicable to the molestation claims against RCBO, and the annual aggregate limits of liability of the Allianz Excess Policies are exhausted after Allianz has paid $5,000,000 for covered claims under each policy period.

80. RCBO disputes that there is any annual aggregate limit under the Allianz Excess Policies applicable to sexual molestation claims and asserts that the annual $5,000,000 annual per occurrence limit of liability in the Allianz Excess Policies applies to sexual molestation claims, with no aggregate limit.

81. An actual controversy exists between RCBO, on the one hand, and the Allianz, on the other hand, regarding Allianz's indemnity obligations to RCBO under the Allianz Excess Policies and whether there is an annual aggregate under the Allianz Excess Policies for molestation claims.

82. RCBO accordingly seeks a judicial declaration that there is no annual aggregate under the Allianz Excess Policies applicable to molestation claims, and that the annual limits of liability under the Allianz Excess Policies is $5,000,000 per occurrence, with no aggregate.

WHEREFORE, Plaintiff The Roman Catholic Bishop of Orange respectfully requests that this Court enter judgment in its favor and against Defendant Allianz Underwriters Insurance Company on Count I and further requests the following relief:

a) A declaration that there is no annual aggregate under the Allianz Excess Policies applicable to molestation claims, and that the annual limits of

16

LATHROP GPM LLP
ATTORNEYS AT LAW
CHICAGO

liability under the Allianz Excess Policies is $5,000,000 per occurrence, with no aggregate;

b)    Costs of the proceedings herein; and

c)    Such other relief as the Court deems just and proper.

## COUNT II:

### Declaratory Judgment Against Allianz

### (Occurrence – John OC-5 DOE Lawsuit)

83.    RCBO re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein

84.    Allianz has taken the position that there is no coverage for the John OC-5 DOE Lawsuit under the Allianz Excess Policies because the claims asserted by the plaintiff in the John OC-5 DOE Lawsuit do not arise out of an occurrence, which is a condition to coverage under the Allianz Excess Policies.

85.    RCBO disputes Allianz's position that the claims asserted by the plaintiff in the John OC-5 DOE Lawsuit do not arise out of an occurrence and disputes that there is no coverage under the Allianz Excess Policies for the John OC-5 DOE Lawsuit.

86.    An actual controversy exists between RCBO, on the one hand, and Allianz, on the other hand, regarding Allianz's indemnity obligations to RCBO under the Allianz Excess Policies and whether the claims asserted by the plaintiff in the John OC-5 DOE Lawsuit arise out of an "occurrence" under the Allianz Excess Policies, thus triggering coverage under the policies.

87.    RCBO accordingly seeks a judicial declaration that the claims asserted by plaintiff against the RCBO in the John OC-5 DOE Lawsuit constitute an "occurrence" under the Allianz Excess Policies and thus trigger coverage under the policies.

WHEREFORE, Plaintiff The Roman Catholic Bishop of Orange respectfully requests that this Court enter judgment in its favor and against Defendants Allianz

LATHROP GPM LLP
ATTORNEYS AT LAW
CHICAGO

Underwriters Insurance Company on Count II and further requests the following relief:

    a)     A declaration that the claims asserted by the plaintiff in the John OC-5 DOE Lawsuit against RCBO constitute an "occurrence" under the Allianz Excess Policies and thus trigger coverage under the policies.

    b)     Costs of the proceedings herein; and

    c)     Such other relief as the Court deems just and proper.

## COUNT III:

### Breach of Contract Against Allianz

88.    RCBO re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

89.    The Allianz Excess Policies are binding and enforceable contracts.

90.    RCBO has complied with all of its contractual obligations under the Allianz Excess Policies.

91.    The John OC-5 DOE Lawsuit is a covered claim under the Allianz Excess Policies.

92.    Allianz has only paid part of its $5,000,000 annual per occurrence limit to settle the John OC-5 DOE Lawsuit and refused to pay its full limits.

93.    Allianz has therefore breached the terms of the Allianz Excess Policies by refusing to tender the full $5,000,000 annual per occurrence limit of liability toward the settlement of the John OC-5 DOE Lawsuit.

94.    As a result of the Insurers' breaches, RCBO has suffered damages by contributing sums toward the settlement of the John OC-5 DOE Lawsuit that should have been paid by Allianz.

WHEREFORE, Plaintiff The Roman Catholic Bishop of Orange respectfully requests that this Court enter judgment in its favor and against Defendant Allianz Underwriters Insurance Company on Count IV and further requests the following relief:

a)   An award of damages in the amount that it contributed toward the settlement of the John OC-5 DOE Lawsuit that should have been paid by Allianz under the Allianz Excess Policies;

b)   Costs of the proceedings herein;

c)   Pre-judgment and post-judgment interest; and

d)   Such other relief as the Court deems just and proper.

## COUNT IV:

### Declaratory Judgment Against Continental

### (No Aggregate – Southern California Clergy Cases)

95.   RCBO re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

96.   Continental has taken the position that the Continental Excess Policies contain a $5,000,000 annual aggregate limit applicable to the molestation claims against RCBO, and the annual aggregate limits of liability of the Continental Excess Policies are exhausted after Continental has paid $5,000,000 toward covered claims under each policy period.

97.   RCBO disputes that there is any annual aggregate limit under the Continental Excess Policies applicable to sexual molestation claims and asserts that the annual $5,000,000 annual per occurrence limit of liability in the Continental Excess Policies applies to sexual molestation claims, with no aggregate limit.

98.   An actual controversy exists between RCBO, on the one hand, and the Continental, on the other hand, regarding Continental's indemnity obligations to RCBO under the Continental Excess Policies and whether there is an annual aggregate under the Continental Excess Policies for molestation claims.

99.   RCBO accordingly seeks a judicial declaration that there is no annual aggregate under the Continental Excess Policies applicable to molestation claims, and that the annual limits of liability under the Continental Excess Policies is $5,000,000 per occurrence, with no aggregate.

WHEREFORE, Plaintiff The Roman Catholic Bishop of Orange respectfully requests that this Court enter judgment in its favor and against Defendant Continental Casualty Company on Count V and further requests the following relief:

d)      A declaration that there is no annual aggregate under the Continental Excess Policies applicable to molestation claims, and that the annual limits of liability under the Continental Excess Policies is $5,000,000 per occurrence, with no aggregate;

e)      Costs of the proceedings herein; and

f)      Such other relief as the Court deems just and proper.

## COUNT VI:

### Declaratory Judgment Against Continental

### (Occurrence – John OC-5 DOE Lawsuit)

100.    RCBO re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein

101.    Continental has taken the position that there is no coverage for the John OC-5 DOE Lawsuit under the Continental Excess Policies because the claims asserted by the plaintiff in the John OC-5 DOE Lawsuit do not arise out of an occurrence, which is a condition to coverage under the Continental Excess Policies.

102.    RCBO disputes Continental's position that the claims asserted by the plaintiff in the John OC-5 DOE Lawsuit do not arise out of an occurrence and disputes that there is no coverage under the Continental Excess Policies for the John OC-5 DOE Lawsuit.

103.    An actual controversy exists between RCBO, on the one hand, and Continental, on the other hand, regarding Continental's indemnity obligations to RCBO under the Continental Excess Policies and whether the claims asserted by the plaintiff in the John OC-5 DOE Lawsuit arise out of an "occurrence" under the Continental Excess Policies, thus triggering coverage under the policies.

104.    RCBO accordingly seeks a judicial declaration that the claims asserted

by plaintiff against the RCBO in the John OC-5 DOE Lawsuit constitute an "occurrence" under the Continental Excess Policies and thus trigger coverage under the policies.

WHEREFORE, Plaintiff The Roman Catholic Bishop of Orange respectfully requests that this Court enter judgment in its favor and against Defendant Continental Casualty Company on Count VI and further requests the following relief:

d)   A declaration that the claims asserted by the plaintiff in the John OC-5 DOE Lawsuit against RCBO constitute an "occurrence" under the Continental Excess Policies and thus trigger coverage under the policies.

e)   Costs of the proceedings herein; and

f)   Such other relief as the Court deems just and proper.

Dated: November 6, 2024

Respectfully submitted,

By: /s/ Ronald A. Valenzuela

Ronald A. Valenzuela (Bar No. 210025)
ronald.valenzuela@Lathropgpm.com
LATHROP GPM LLP
2049 Century Park East, Suite 3500S
Los Angeles, California 90067-1623
Telephone:   310.789.4600
Facsimile:    310.789.4601

Todd C. Theodora, Esq. (Bar No. 120426)
TTheodora@tocounsel.com
Andrew B. Breidenbach, Esq. (Bar No. 281586)
abreidenbach@tocounsel.com
THEODORA ORINGHER PC
535 Anton Blvd., Suite 900
Costa Mesa, CA 92626
Telephone: 714.549.6200
Facsimile: 714.549.6201

Attorneys for The Roman Catholic Bishop of Orange

LATHROP GPM LLP
ATTORNEYS AT LAW
CHICAGO

21

COMPLAINT

LATHROP GPM LLP
ATTORNEYS AT LAW