Ronald A. Valenzuela (Bar No. 210025)
Ronald.Valenzuela@Lathropgpm.com
LATHROP GPM LLP
2029 Century Park East, Suite 1280N
Los Angeles, California 90067-1623
Telephone: 310.789.4600
Facsimile: 310.789.4601
Attorney for Defendant/Counterclaim Plaintiff
THE ROMAN CATHOLIC BISHOP OF ORANGE

*Additional Counsel on Signature Page*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

THE ROMAN CATHOLIC BISHOP OF ORANGE, a California Corporation Sole,

Plaintiff,

vs.

ALLIANZ UNDERWRITERS INSURANCE COMPANY f/k/a ALLIANZ UNDERWRITERS, INC., an Illinois Corporation, and CONTINENTAL CASUALTY COMPANY, an Illinois Corporation,

Defendants.

CASE NO. 2:24-cv-09612 MRA (ADSx)

**THE ROMAN CATHOLIC BISHOP OF ORANGE'S OPPOSITION TO CONTINENTAL CASUALTY COMPANY'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing Date: May 19, 2025
Hearing Time: 1:30 p.m.
Judge: Hon. Mónica Ramírez Almadani
Courtroom: 10B

**<u>MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CONTINENTAL CASUALTY COMPANY'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 1

III. ARGUMENT .......... 3

A. Count II of the FAC States a Claim Against Continental .......... 3

1. Standard of Review .......... 3

2. Continental Fails to Establish that RCBO Cannot State a Claim .......... 4

B. Dismissal of Count II is Not Warranted on Any Other Ground. .......... 8

C. Alternatively, to the extent the Court entertains granting Continental's Motion, RCBO should be granted leave to amend to cure any pleading deficiencies. .......... 8

IV. CONCLUSION .......... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
465 F.3d 946 (9th Cir. 2006) ....... 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....... 3, 4

*Cardigan Mountain Sch. v. New Hampshire Ins. Co.*,
787 F.3d 82 (1st Cir. App. 2015) ....... 5

*Certain Underwriters at Lloyd's of London v. Superior Court*,
56 Cal.App.4th 952 (1997) ....... 5, 6

*Chung Hak Hong v. U.S. Dept. of Homeland Security Citizenship and Immigration Servs.*,
662 F. Supp. 2d 1195 (C.D. Cal. 2009) ....... 3

*Dart Indus., Inc. v. Commercial Union Ins. Co.*,
28 Cal.4th 1059 (2002) ....... 6

*Deere & Co. v. Allstate Ins. Co.*,
32 Cal.App.5th 499 (2019) ....... 6, 7

*Evanston Insurance Company v. The Roman Catholic Bishop of Orange*
Case, 2024 WL 5180078 (C.D. Cal. Dec. 17, 2024) ....... 1, 2, 5, 7, 8

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ....... 8

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ....... 4

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) ....... 4

*Purely Driven Prods., LLC v. Chillovino, LLC*,
171 F. Supp. 3d 1016 (C.D. Cal. 2016) ....... 4

*Scheuer v. Rhodes*,
416 U.S. 232 (1974) .... 4

*Software Res., Inc. v. Dynatrace LLC*,
316 F. Supp. 3d 1112 (N.D. Cal. 2018) .... 4

*Starr Indem. & Liab. Co. v. Belger*,
2016 WL 7646996 (C.D. Cal. Dec. 13, 2016) .... 7

*Waller v. Truck Ins. Exch., Inc.*,
11 Cal.4th 1 (1995) .... 5

*Wi2Wi, Inc. v. Twin City Fire Ins. Co.*,
2020 WL 4913489 (N.D. Cal. May 5, 2020) .... 4

**Statutes**

California Child Victims Act .... 1

Declaratory Judgment Act .... 4

**Rules**

Fed. R. Civ. P. 12(b)(6) .... 4, 5

Fed. R. Civ. P. 15(a)(2) .... 8

The Roman Catholic Bishop of Orange ("RCBO") submits this opposition in response to Continental Casualty Company's ("Continental") motion to dismiss.

## I. INTRODUCTION

Count II of RCBO's First Amended Complaint (the "FAC") seeks a declaratory judgment that the two excess liability insurance policies issued to RCBO by Continental (defined below as the "Continental Policies") do not contain aggregate limits of liability. Continental moves to dismiss Count II on the basis that the "same" policy language was interpreted by this Court in *Evanston Insurance Company v. The Roman Catholic Bishop of Orange* (the "*Evanston* Case") to provide an aggregate limit of liability for general liability claims, such as the CCVA Claims (defined below), as a matter of law. Continental, however, fails to establish that the Continental policies contain the "same" aggregate limits policy language addressed in the *Evanston* Case. In fact, Continental has not produced or identified the actual limits of liability language from the Continental Policies. It therefore fails to meet its burden for dismissal and its Motion should be denied.

## II. STATEMENT OF FACTS

This is an insurance coverage action brought by RCBO against two of its higher-layer excess insurers, Continental and Allianz Underwriters Insurance Company ("Allianz"), seeking to declare the that the policies issued by these insurers to RCBO do not contain aggregate limits of liability applicable to the hundreds of underlying claims brought against RCBO under the California Child Victims Act (CA AB-218) (the "CCVA Claims") ( ("FAC") (Doc. 9) at ¶¶ 1-2). Continental issued at least two excess liability insurance policies to RCBO: (1) Policy No. RDX 143-36-23 (June 18, 1979 – June 18, 1980); and (2) Policy No. RDX 178-76-10 (June 18, 1980 – June 18, 1981) (collectively, the "Continental Policies"). (*Id.* at ¶ 42). Continental has not yet produced a completed copy of either of the Continental Policies. (*Id.* at ¶ 43).

RCBO attaches the evidence of the Continental Policies in its possession as

Exhibit 10 to the FAC. (*Id.* at ¶ 42 and Ex. 10 attached thereto). Notably, the evidence of the Continental Policies does not include a limits of liability provision. (*Id.*).[1] There is thus no policy evidence before the Court establishing the language of limits of liability provision in the Continental Policies, let alone that the Continental Policies contain the "same" limits of liability language as in the *Evanston* Case.[2] Continental thus attempts to establish its own policy language through the fallacious assertion that, "RCBO alleges that the same language this Court construed in Evanston applies to the Alleged Continental Policies." This claim is not borne out by even a cursory review of the FAC.

The FAC alleges, based on the available policy evidence, that the Continental Policies are follow-form excess policies and that they provide an annual $5,000,000 per occurrence limit of liability. (*Id.* at ¶¶ 43-44). RCBO further alleges that:

> [*A]ccording to Continental*, each of the Continental Excess Policies provides that "the provisions of the immediately underlying policy are incorporated as a part of the policy *except* for any obligation to defend and pay for costs and expenses incident to the same, ***the amount of the limits of liability***, any "other insurance" provision and any other

[1] The policy evidence does include a Declarations Page stating the per occurrence and aggregate limits of the Continental Policies but does not include the limits of liability policy language. (FAC Ex. 10). As evidenced by the Allianz and Evanston policy forms, the stated limits on the Declarations Page are modified by and subject to the separate limits of liability provisions of the policies. (*Id.* at Ex. 7 at Insuring Agreements § 2. Limits of Liability – Underlying Limits and Ex. 8-9 Insuring Agreements § 2. Limits of Liability – Underlying Limits).

[2] In reaching its decision, the Court in the *Evanston* Case relied on the limit of liability provision in the policy at issue, which stated in relevant part: "the Underwriters shall then be liable to pay only the excess thereof up to a further $ [4 million] Ultimate Net Loss in respect of each occurrence – subject to a limit of $ [4 million] in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and separately in respect of [Occupational Injury]." *See Evanston* Case, 2024 WL 5180078, at *6 (C.D. Cal. Dec. 17, 2024). No such provision is referenced by Continental.

> provisions therein which are inconsistent with the provisions of this policy.""

(*Id.* at ¶ 46) (emphasis added). Finally, RCBO alleges that there is ***no*** aggregate limit of liability in the Continental Policies applicable to general liability claims, such as the CCVA Claims for which RCBO is seeking coverage and that the "$5,000,000 limit of liability in the Continental Excess Policies applies … *only on a per occurrence basis, with no aggregate limit.*" (*Id.* at ¶ 49, 82) (emphasis added).

It must be from these allegations that Continental erroneously concludes that, "RCBO alleges that the same language this Court construed in Evanston applies to the Alleged Continental Policies." Continental's argument, however, is based on an incomplete and misleading quote from Paragraph 46 of the FAC. Specifically, Continental misleadingly advises the Court that in Paragraph 46, "*RCBO* avers that 'each of the [Alleged] Continental Excess Policies provides that the "provisions of the immediate underlying policy are incorporated as a part of this policy …." (Continental's Mem. In Support of Motion to Dismiss (Doc. 19.1) at p. 6). RCBO makes no such averment. Instead, Paragraph 46 clearly alleges, "*According to Continental*, … the provisions of the immediate underlying policy are incorporated as a part of this policy …" Paragraph 46 further alleges that "*[A]ccording to Continental*, … the amount of the limits of liability" are *not* incorporated from the immediate underlying policy. Continental's claim thus runs afoul of the actual allegations in the FAC.

## III. ARGUMENT

### A. Count II of the FAC States a Claim Against Continental.

#### 1. Standard of Review

The sole issue raised by a 12(b)(6) motion is whether the facts as pled would, if established, support a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Chung Hak Hong v. U.S. Dept. of Homeland Security Citizenship and Immigration Servs.*, 662 F. Supp. 2d 1195, 1198 (C.D. Cal. 2009)

("The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted"). The movant has the burden of establishing that the complaint fails to set forth a cognizable legal theory or sufficient facts to support a cognizable legal theory – a low bar to clear. Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 555-56; *Software Res., Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1116 (N.D. Cal. 2018) ("The party moving for dismissal has the burden of proving that no claim has been stated"). In evaluating 12(b)(6) motions, the court must accept all material allegations in the complaint as true and construe the pleadings in a light most favorable to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

To state a claim under the Declaratory Judgment Act, RCBO need only present a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). "[T]he only question is whether, on the basis of the allegations, a proper case is presented for invoking the jurisdiction of the court to make a declaratory judgment and not whether the plaintiff is entitled to a favorable declaration." *Wi2Wi, Inc. v. Twin City Fire Ins. Co.*, 2020 WL 4913489, at *6 (N.D. Cal. May 5, 2020); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### 2. Continental Fails to Establish that RCBO Cannot State a Claim

Continental does not assert that RCBO fails to plead sufficient facts or otherwise state a claim under the Declaratory Judgment Act. *Purely Driven Prods., LLC v. Chillovino, LLC*, 171 F. Supp. 3d 1016, 1018 (C.D. Cal. 2016) (Plaintiff must only show there is a justiciable controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment). Rather, Continental asserts that RCBO cannot state a claim since the "same" limits of liability language in the Continental Policies has been judicially

construed as providing for an aggregate limit of liability as a matter of law for the CCVA Claims. This argument fails because Continental has failed to establish that the limits of liability language in the Continental Policies is the "same" language construed in the *Evanston* Case.[3] The Motion should therefore be denied.

In order to prevail on its Motion, Continental must establish that its Policies have the "same" aggregate limits policy language construed in the Evanston Case. It does not meet this burden.

First, the evidence of the Continental Policies before the Court does not contain the "same" limits of liability language found in *Evanston*. Tellingly, Continental does not rely on, cite to, or even mention the actual policy language. This omission is fatal.

The interpretation of an insurance policy always starts by looking at the language of the policy. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18 (1995). In order for dismissal to be entered at this stage, it is axiomatic that Continental must *prove* what the Continental Policies actually say. *See Certain Underwriters at Lloyd's of London v. Superior Court*, 56 Cal.App.4th 952, 955 (1997) ("absent relevant admissions by the insured, an insurer moving for summary adjudication of issues or summary judgment on the merits of a case in which coverage is disputed must provide copies of the policies or, if the policies are missing, secondary evidence sufficient to inform the court of the relevant terms and conditions of the insurance contract."); *Cardigan Mountain Sch. v. New Hampshire Ins. Co.*, 787 F.3d 82, 88 (1st Cir. App. 2015) (noting "the parties have cited no precedent to guide us on the

---

[3] RCBO further disagrees with the *Evanston* Court's conclusion that the aggregate limits provision at issue in that case was unambiguous and provided for an annual aggregate limit of liability for general liability claims, as well as its determination that dismissal was proper under Rule 12(b)(6). It is in the process of appealing that decision. It also opposes Allianz's Motion to Dismiss in this action is brought on that same ground. This, however, is not the issue in this Motion, as Continental has not established that its Policies contain the "same" language construed by the *Evanston* Court.

application of [the motion to dismiss] standard to a lost-insurance-policy suit and we have found very little on our own. Instead, nearly every lost-policy case we know concerns what showing must be made to survive *summary judgment*") (emphasis added). Here, the actual policy language is not before the Court. The critical portions of the Continental Policies for Continental's Motion—the limits of liability provisions—are missing. The absence of the policy language evidence alone requires that the Motion be denied.[4]

Continental attempts to escape the absence of the actual policy language by asserting that, "RCBO alleges that the same language this Court construed in Evanston applies to the Alleged Continental Policies." As set forth above, RCBO makes no such allegation. Continental cannot establish the language of its own policy by misquoting the allegations of the FAC, especially given RCBO expressly alleges that the Continental Policies do not have aggregate limits and that, "[A]ccording to Continental, … the amount of the limits of liability" are *not* incorporated from the immediate underlying policy.

Nor can Continental meet its burden by arguing that because its' policies are allegedly follow-form policies that they include the same limits of liability language as the lower layer policies in RCBO's insurance tower. This is wrong for a number of reasons. For one, follow-form policies—*e.g.*, policies that (as the name suggests) "follow-form" by containing the same basic provisions as the underlying policy—rarely (if ever) incorporate the limits of liability provisions from the underlying policy. *E.g.*, *Deere & Co. v. Allstate Ins. Co.*, 32 Cal.App.5th 499, 506 (2019)

[4] Policyholders, like RCBO, are not required to prove the merits of their claim at the pleading stage and without the benefit of fact discovery (to ascertain the terms of the missing policy) and expert discovery (if necessary, to reconstruct the terms of the missing policy, which was likely comprised of standard policy forms). *Dart Indus., Inc. v. Commercial Union Ins. Co.*, 28 Cal.4th 1059, 1073-74 (2002); *Certain Underwriters at Lloyd's of London*, 56 Cal.App.4th at 955.

(citation omitted) (recognizing that "[a] follow form excess policy has the same terms and conditions as the [underlying] policy *but has a different liability limit*") (emphasis added); *Starr Indem. & Liab. Co. v. Belger*, 2016 WL 7646996, at *5-6 (C.D. Cal. Dec. 13, 2016) ("limits of liability included in an underlying insurance policy are generally not incorporated into excess insurance policies solely through follow form clauses").

Indeed, the limits of liability provisions are the core difference between the follow-form and underlying policy. *Deere*, 32 Cal.App.5th at 506. As alleged in the FAC, Continental acknowledges this very distinction, saying the "provisions of the immediate underlying policy are incorporated as part of this [the Continental Policies] except … *the amount of the limits of liability ….*" (FAC at ¶ 46) (emphasis added). This is further evidenced by reference to the Allianz, Associated International Insurance Company ("Associated"), and Aetna Casualty and Surety Company ("Aetna") polices underlying the Continental Policies, which state that they are follow form, but separately provide their own limits of liability provisions. For example, the Associated policy contains different limits of liability provisions than the underlying Aetna policies. (*Compare* FAC Exs. 1-2, Aetna Limits of Liability § 4.1 *with* FAC Ex. 7, Associated Insuring Agreements, § 2 Limit of Liability). The Continental Policies therefore cannot simply be assumed to have the "same" limits of liability provision as the provision at issue in the *Evanston* Case.

Thus, the Evanston Case and the cases relied on in reaching that decision—*Garamendi*, *San Diego Unified Port District*, and *San Bernardino County*—are unavailing here. In each of those cases, the relevant policy language was disclosed and not in dispute. Conversely, Continental has failed to establish the pertinent policy language. Its Motion should not be granted based on assumption, conjecture, or a misleading citation to the FAC.

RCBO has alleged sufficient facts in the FAC to state its claim for declaratory relief against Continental. Nothing more is required at this juncture. Continental has

not shown—nor can it now show—that the Continental Policies contain identical limits of liability provisions as those in the *Evanston* Case. Continental's Motion should be denied.

**B. Dismissal of Count II is Not Warranted on Any Other Ground.**

To the extent that the Court further considers Continental's arguments, dismissal is still not be warranted for the same reasons set forth in RCBO's contemporaneously filed Opposition to Allianz's Motion, which RCBO incorporates by reference as if fully set forth herein.

**C. Alternatively, to the extent the Court entertains granting Continental's Motion, RCBO should be granted leave to amend to cure any pleading deficiencies.**

RCBO's FAC validly alleges a declaratory judgment claim against Continental, and therefore, Continental's Motion should be denied. However, to the extent the Court determines that additional factual allegations are necessary, RCBO should be allowed leave to amend its complaint. Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2); *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Under this liberal standard, a court should generally grant leave unless it would prejudice the opposing party, is sought in bad faith, is futile, or creates undue delay. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992).

Accordingly, in the alternative, RCBO requests leave to amend Count II against Continental to cure any pleading deficiencies identified by the Court.

## IV. CONCLUSION

For the foregoing reasons, Continental's motion to dismiss cannot possibly succeed because Continental cannot show its policies contain the same limits of liability provisions in the *Evanston* Case. Thus, Continental's motion should be denied.

Dated: April 28, 2025

Respectfully submitted,

By: /s/ *Ronald A. Valenzuela*

Ronald A. Valenzuela (Bar No. 210025)
ronald.valenzuela@Lathropgpm.com
LATHROP GPM LLP
2049 Century Park East, Suite 3500S
Los Angeles, California 90067-1623
Telephone: 310.789.4600
Facsimile: 310.789.4601

Todd C. Theodora, Esq. (Bar No. 120426)
TTheodora@tocounsel.com
Andrew B. Breidenbach, Esq. (Bar No. 281586)
abreidenbach@tocounsel.com
THEODORA ORINGHER PC
535 Anton Blvd., Suite 900
Costa Mesa, CA 92626
Telephone: 714.549.6200
Facsimile: 714.549.6201

Brent W. Vincent (*pro hac vice*)
Brent.Vincent@lathropgpm.com
LATHROP GPM LLP
155 N. Wacker Drive, Suite 3800
Chicago, IL 60606
Telephone: 314.920.3309
Facsimile: 314.920.3301

Noah H. Nash (*pro hac vice*)
Noah.Nash@lathropgpm.com
LATHROP GPM LLP
2345 Grand Boulevard, Suite 2200
Kansas City, MO 64108
Telephone: 816.292.2000
Facsimile: 816.292.2001

Attorneys for The Roman Catholic Bishop of Orange