UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-09612-MRA-ADS | Date | September 25, 2025 |
| Title | *The Roman Catholic Bishop of Orange v. Allianz Underwriters Ins. Co. et al.* | | |

| | |
|---|---|
| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Melissa H. Kunig | None Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [17] [19]**

Before the Court are Defendants' Motions to Dismiss Plaintiff's First Amended Complaint (collectively, the "Motions"). ECF 17, 19. The Court read and considered the moving, opposing, and reply papers and held a hearing on June 2, 2025. ECF 50. For the reasons stated herein, the Court **GRANTS** Defendant Allianz Underwriters Insurance Company's Motion, ECF 17, and **DENIES** Defendant Continental Casualty Company's Motion, ECF 19.

## I. BACKGROUND

In 2019, California enacted the California Childhood Victims Act ("CCVA"), which increased the time limit for commencing a legal action to recover damages sustained as a result of childhood sexual assault. Cal. Code Civ. Proc. § 340.1(a). As a result of the CCVA's passage, the Roman Catholic Bishop of Orange ("Plaintiff" or "RCBO") "has received hundreds of separate underlying claims [] for damage from survivors of alleged childhood sexual molestation which occurred decades ago." ECF 9 (First Amended Complaint) ¶ 2. On November 6, 2024, RCBO filed this action against Defendants Allianz Underwriters Insurance Company ("Allianz") and Continental Casualty Company ("Continental") (collectively, "Defendants"), seeking a judicial declaration that the insurance policies Defendants issued to RCBO between 1979 and 1981 do not contain annual aggregate limits that apply to the underlying claims of sexual abuse against RCBO. ECF 1. On December 12, 2024, RCBO filed the operative First Amended Complaint ("FAC"). ECF 9.

At issue in this action are the insurance policies issued by Defendants to RCBO during the 1979-1980 and 1980-1981 coverage periods. *Id.* ¶¶ 33-49. Both the Allianz and the Continental policies are excess insurance policies, meaning that they provide additional coverage for the insured (here, RCBO) in the event the insured exceeds the coverage limits of an underlying insurance policy. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-09612-MRA-ADS | Date | September 25, 2025 |
| Title | *The Roman Catholic Bishop of Orange v. Allianz Underwriters Ins. Co. et al.* | | |

Allianz issued two excess insurance policies to RCBO: one extending from 1979-1980 and the other extending from 1980-1981. *Id.* ¶¶ 33-41. Each of these policies contained the following "Limit of Liability – Underlying Limits" language:

> It is expressly agreed that liability shall attach to [Allianz] only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective Ultimate Net Loss Liability as follows: $[5,000,000] Ultimate Net Loss in respect of each occurrence, but $[5,000,000] in the aggregate for each annual period during the currency of this Policy separately in respect of Personal Liability and separately in respect of Personal Injury . . . by Occupational Disease sustained by any employees of the Assured, and [Allianz] shall then be liable to pay only the excess thereof up to a further $[5,000,000] Ultimate Net Loss in respect of each occurrence – subject to a limit of $[5,0000,000] in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and separately in respect of Personal Injury . . . by Occupational Disease sustained by any employees of the Assured.

*Id.* ¶ 33, Ex. 8 (ECF 9-8) at 3, Ex. 9 (ECF 9-9) at 5. Allianz argues that each of its policies contains a $5 million annual aggregate limit applicable to the underlying claims, whereas RCBO disputes that there is any annual aggregate limit applicable to the underlying claims and that the annual liability limit of $5 million applies to the underlying claims only on a per-occurrence basis with no aggregate limit. *Id.* ¶¶ 77-79.

Continental has not provided a complete copy of the Continental policies to RCBO. FAC ¶ 43. However, the policy pages provided to date indicate that the Continental policies are "follow form excess policies," *id.*, meaning that they "sit immediately excess to, and incorporate the provisions of, policies issued by [Allianz]," ECF 9-10, 19-1 at 2. Each of the Continental policies is believed to use the same coverage forms. FAC ¶ 43. Upon information and belief, the 1979-1980 Continental policy contains an annual $5 million per occurrence limit of liability in excess of the underlying policies. *Id.* ¶ 44. The 1980-1981 Continental policy provides an annual $5,000,000 per occurrence limit of liability in excess of the underlying policies. *Id.* ¶ 45; ECF 9-10. "According to Continental," the Continental policies provide that:

> [The] provisions of the immediate underlying policy [the Allianz policy] are incorporated as a part of this policy except for any obligation to investigate and defend and pay for costs and expenses incident to the same, the amount of the limits of liability, any "other insurance" provision and any other provisions therein which are inconsistent with the provisions of this policy.

FAC ¶ 46; *see also id.* ¶¶ 47-48 (alleging that the "immediate underlying polic[ies]" for the Continental policies are the corresponding Allianz policies). RCBO maintains that the annual $5 million limit of liability in the Continental policies applies only on a per-occurrence basis without any aggregate limit. *Id.* ¶¶ 49, 82. Continental does not acknowledge that its policies lack an annual aggregate limit applicable to the underlying claims. *Id.* ¶ 83.

On these factual allegations, RCBO brings two separate claims for declaratory judgment against Allianz and Continental, respectively. *Id.* at 16-17. RCBO seeks a judicial declaration that neither the Allianz nor the Continental policies contain an annual aggregate limit applicable to general liability claims, including the underlying claims, and that the annual limit of liability under the policies is $5 million per occurrence, with no aggregate limit. *Id.*

On February 10 and 11, 2025, Allianz and Continental filed the instant Motions to Dismiss for failure to state a claim. ECF 17, 19. RCBO filed Oppositions. ECF 39, 40. Defendants filed Replies. ECF 42, 50.

## II. <u>LEGAL STANDARDS</u>

### A. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for failure to state a claim upon which relief can be granted. "On a motion to dismiss, all material facts are accepted as true and are construed in the light most favorable to the plaintiff." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (citing *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). In other words, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (per curiam). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B. Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that once the time for amending a pleading as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." In general, "[a] district court shall grant leave to amend

freely when justice so requires." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc)). "This policy is to be applied with extreme liberality." *Id.* (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). A district court should generally grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts," making any potential amendments futile. *Lopez*, 203 F.3d at 1130 (quoting *Doe v. U.S.*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. <u>DISCUSSION</u>

### A. Declaratory Judgment

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The case or controversy requirement under the Declaratory Judgment Act is "identical to Article III's constitutional case or controversy requirement." *Am. States Ins. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994). "This provision confers on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants[.]" *Argonaut Ins. Co. v. St. Francis Med. Ctr.*, 17 F.4th 1276, 1280 (9th Cir. 2021) (citation omitted) (cleaned up). Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986) (citation omitted).

It is undisputed that this case involves a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); *see also* FAC ¶¶ 10, 76, 81. However, RCBO argues that it is procedurally inappropriate for the Court to consider Defendants' Motions to Dismiss for failure to state a claim because RCBO has alleged an actual case or controversy. ECF 40 at 7. This position is incorrect as a matter of law. The Court addressed this issue in a parallel case, *Evanston Ins. Co v. the Roman Catholic Bishop of Orange* (*Evanston*), explaining that although an actual case or controversy is a condition precedent for justiciability, a plaintiff seeking relief (via a declaratory judgment or any other procedural posture) must also state a viable claim. *See* 729 F. Supp. 3d 1019, 1026 (C.D. Cal. 2024) (citing *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010); *Shaterian v. Wells Fargo Bank, N.A.*,

829 F. Supp. 2d 873, 888 (N.D. Cal. 2011)). In other words, dismissal for failure to state a claim may be considered separate and apart from justiciability. *Id.*

### B. Interpretation of Annual Aggregate Limit Provision

Under California law, "interpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the W. v. Superior Ct.*, 2 Cal. 4th 1254, 1264 (1992). "[T]he mutual intention of the parties at the time the contract is formed governs interpretation." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993) (citing Cal. Civ. Code § 1636).

"Such intent is to be inferred, if possible, solely from the written provisions of the contract." *Id.* (citing Cal. Civ. Code § 1639). "If the policy language 'is clear and explicit, it governs.'" *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) (quoting *Bank of the W.*, 2 Cal. 4th at 1264); *see also* Cal. Civ. Code § 1638. When interpreting a policy provision, courts "must give its terms their 'ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage." *Palmer*, 21 Cal. 4th at 1115 (citation omitted); *see also* Cal. Civ. Code § 1644. Courts "must also interpret these terms 'in context' and give effect 'to every part of the policy with 'each clause helping to interpret the other.'" *Palmer*, 21 Cal. 4th at 1115 (citations omitted). "A policy provision is ambiguous *only* if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole." *Id.* Courts will not adopt "a strained or absurd interpretation in order to create an ambiguity where none exists." *Bay Cities Paving*, 5 Cal. 4th at 867 (quoting *Reserve Ins. Co. v. Pisciotta*, 30 Cal. 3d 800, 809 (1982)).

"Where a policy term has been judicially construed, it is not ambiguous." *McMillin Homes Constr. Inc. v. Nat'l Fire & Marine Ins. Co.*, 35 Cal. App. 5th 1042, 1052 (2019) (citing *Cnty. of San Diego v. Ace Prop. & Cas. Ins. Co.*, 37 Cal. 4th 406, 423 (2005)). "[T]he judicial construction of the term should be read into the policy unless the parties express a contrary intent." *Bartlome v. State Farm Fire & Cas. Co.*, 2018 Cal. App. 3d 1235, 1239 (1989). This rule of insurance policy interpretation, however, is to be applied "with caution, first determining whether the context in which the construed term appears is analogous to the context of the term before [it]." *Lockheed Corp. v. Continental Ins. Co.*, 134 Cal. App. 4th 187, 197 (2005). When "there is relevant precedent from the state's intermediate appellate court, the federal court must follow the state's intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it." *Teleflex Med. Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 851 F.3d 976, 982 (9th Cir. 2017) (quoting *Ryman v. Sears, Roebuck &*

*Co.*, 505 F.3d 993, 994 (9th Cir. 2007)). However, "[t]he existence of conflicting judicial interpretations of a policy provision may support a finding that a policy provision is ambiguous." *Lakeland Vill. Homeowners Ass'n v. Great Am. Ins. Grp.*, 727 F. Supp. 2d 887, 891 (E.D. Cal. 2010) (citing *Fire Ins. Exchange v. Sup. Ct.*, 116 Cal. App. 4th 446, 465 (2004)).

### *1. Evanston*

Defendants argue that RCBO fails to state a claim because the aggregate limit of liability provisions in the Allianz and Continental policies unambiguously applies to general liability claims. ECF 17-1 at 9-10; ECF 19-1 at 4-5. They emphasize that this Court recently interpreted substantively identical limit-of-liability language in *Evanston*. ECF 17-1 at 6, 10-13; ECF 19-1 at 5-6. Further, Defendants argue that, as was the case in *Evanston*, it would be inappropriate for the Court to consider extrinsic evidence to infer the will of the parties, because the contract language is "clear and explicit." ECF 17-1 at 9-13; ECF 19-1 at 5-6; *Palmer*, 21 Cal. 4th at 1115.

In *Evanston*, RCBO filed a counterclaim against a different insurer, Evanston Insurance Company ("Evanston"), arguing that the annual aggregate limit provision in the excess insurance policy issued by Evanston's predecessor-in-interest did not apply to the claims of childhood sexual assault underlying that action. 759 F. Supp. 3d at 1019. The policy language at issue in *Evanston* was identical to the limit-of-liability language in the Allianz policies here, but for the monetary amount and the insurer. *See id.* at 1023-24. In granting Evanston's motion to dismiss RCBO's counterclaim, the Court relied on several other cases in which courts found that the aggregate limit provisions in standard form policies have been interpreted to unambiguously contain a general aggregate limit. *Id.* at 1029 (discussing *Garamendi v. Mission Ins. Co.* (*Garamendi*), 131 Cal. App. 4th 30 (2005); *San Diego Unified Port District v. Landmark Insurance Company* (*Landmark*), 809 F. App'x 407 (9th Cir. 2020); and (3) *San Bernardino County v. Insurance Company of Pennsylvania* (*San Bernardino*), No. CV 21-01978-PSG-JEM, 2023 WL 4291835 (C.D. Cal. May 16, 2023)). ECF 31-1 at 15. The Court held that "[b]ecause the language at issue has been judicially construed in the context of other form policies, . . . the aggregate limit provision at issue here is unambiguous as a matter of law" and susceptible to only one reasonable interpretation: "that the policy contains a[n] . . . aggregate limit for general liability claims, and separate aggregate limits for products liability and occupational injury." *Id.* at 1029-30.

The Court further determined that RCBO's contrary interpretation was not reasonable for several reasons. *Id.* at 1030. For one, it "would mean that [the insurer] contracted to cap its liability . . . per occurrence, but inexplicably set *no* ceiling on its annual aggregate liability for a series of occurrences giving rise to general liability." *Id.* at 1030. Moreover, RCBO's

interpretation of "the provision at issue, 'instead of limiting liability as the ["Limit of Liability"] heading suggests is its intent, works to *expand* [the insurer]'s potential liability.'" *Id.* (quoting *Garamendi*, 131 Cal. App. 4th at 43). Lastly, under RCBO's interpretation, "recovery for general liability claims would *never* exhaust under the first umbrella/excess policy, and there would be no demarcation of where the [primary policy] ends, and the [excess policy] begins. And there would have been no need for RCBO to purchase another layer of coverage for general liability claims if it believed it was covered in perpetuity under the [primary] [p]olicy." *Id.* at 1030-31. Returning to the limit-of-liability provision at issue, the Court reiterated its conclusion: "The aggregate limit provision is subject to only one reasonable interpretation: 'separate' does not mean 'only.'" *Id.* at 1032. As such, the Court held as a matter of law that the policy at issue "includes a[n] annual aggregate limit for general liability claims and separate annual aggregate limits for products liability and occupational injury." *Id.*

Defendants urge the Court to follow its decision in *Evanston*. ECF 17-1 at 12-13; ECF 19-1 at 6. RCBO respectfully maintains that *Evanston* was wrongly and prematurely decided. ECF 40 at 7.

### 2. *Allianz Policies*

There is no dispute that the Allianz policies contain substantially the same language as the policies at issue in *Evanston*. The limit-on-liability provision provides that, in the event that RCBO exceeds the coverage amount in its underlying policy, Allianz "shall then be liable to pay only the excess thereof up to a further $[5,000,000] Ultimate Net Loss in respect of each occurrence – *subject to a limit of $[5,0000,000] in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and separately in respect of Personal Injury by Occupational Disease* sustained by any employees of the Assured." ECF 9-8 at 3 (emphasis added); ECF 9-9.

RCBO maintains that interpretation of this policy language is not fixed as a matter of law under the California Court of Appeals' ruling in *Garamendi*, and that federal courts, including this Court in *Evanston*, have misapplied that decision. ECF 40 at 14-20. RCBO further argues that dismissing the case without considering "extrinsic evidence of the intent of the parties and of whether a policy provision is ambiguous" would be an "error." *Id.* at 8. The Court disagrees and stands by its prior holdings in *Evanston*. For the reasons stated in its prior decision, the Court finds as a matter of law that the Allianz policies contain an annual aggregate limit for general liability claims in the amount of $5 million. The Court further finds that, under California law, "intent is to be inferred, if possible, solely from the written provisions of the contract," making the introduction of extrinsic evidence inappropriate. *Bay Cities*, 5 Cal. 4th at 867 (citing Cal.

Civ. Code § 1639).

Accordingly, for the reasons stated herein and in its decision in *Evanston*, the Court **GRANTS** Allianz's Motion to Dismiss. Because the Allianz policy is unambiguous and subject to only one reasonable interpretation, the Court finds that any further amendment would be futile. Thus, Plaintiff's request for leave to amend is **DENIED**.

### *3. Continental Policies*

The Continental policies pose a trickier question because the complete language from those policies is not before the Court. RCBO argues that the "critical portions" of the Continental policies—the limits-of-liability provisions—are missing, and as such, the evidence of the Continental policies does not support a finding that they contain the "same" limits-of-liability language found in the Allianz policies and the policies at issue in *Evanston*. ECF 39 at 9-10. Continental acknowledges that it has not provided RCBO or this Court with the limits-of-liability language for its policies but maintains that the Continental policies "follow form to the underlying Allianz policies, which themselves contain the same language" as the policies at issue in *Evanston*. ECF 42 at 2.

To prevail on this theory, Continental has the burden of establishing that its policies contain the "same" aggregate limit policy language construed in *Evanston*. *See Certain Underwriters at Lloyd's of London v. Superior Ct.*, 56 Cal. App. 4th 952, 955 (1997) ("[A]bsent relevant admissions by the insured, an insurer . . . must provide copies of the policies or, if the policies are missing, secondary evidence sufficient to inform the court of the relevant terms and conditions of the insurance contract."). It is well-established that courts generally "look to the language of a contract to ascertain its meaning." *Dart Indus., Inc. v. Comm. Union Ins. Co.*, 28 Cal. 4th 1059, 1073 (2002). "[W]hen a contract has been lost in good faith, and the actual language is unavailable, the law does not require proof of such language." *Id.* Instead, "the proponent of the lost document need only prove the relevant substance of the document." *Id.* (citations omitted). This usually requires "an approximation of the actual language through specimen policies, standardized policies, policies from preceding or subsequent years, and the like." *Id.* (citations omitted). Given the requirement for secondary proof, such "lost-policy" cases are generally decided at summary judgment with the benefit of discovery and expert testimony. *See, e.g.*, *id.* at 1073-74; *Certain Underwriters*, 56 Cal. App. 4th at 955.

In the absence of actual policy language, Continental contends that RCBO admits in its FAC that the Continental policies follow form from the Allianz policies. ECF 19-1 at 6; *see also* FAC ¶ 43. RCBO responds that although the FAC concedes that the Continental policies are *likely* follow-form policies based on the policy documents made available to RCBO, that is not an

admission that the policies definitely follow form to the Allianz policies. *See* FAC ¶ 43; *see also* ECF 54 (Tr.) at 14:03-11. At the hearing, RCBO suggested that the Continental policies may actually be umbrella policies or that they may follow form to the underlying Aetna policies (which sit directly below the Allianz policies) instead of the Allianz policies. Tr. at 15:14-25, 16:07-25, 17:01-06. RCBO further argues that even if the Continental policies follow form from the Allianz policies, that does not establish as a matter of law that the Continental policies include the same limits of liability as the Allianz policies because follow form policies "rarely (if ever) incorporate the limits of liability provisions from the underlying polic[ies]." ECF 38 at 10-11.

"A 'following form' policy incorporates the terms and conditions of another carrier's policy and provides the same scope of coverage as the underlying policy." *Wells Fargo Bank v. Cal. Ins. Guarantee Assn.*, 38 Cal. App. 4th 936, 940 (1995). It is "generally short, consisting of one or two pages, with an endorsement or provision that incorporates by reference the underlying policy coverages, except for the premium, the liability limits, and the obligation to investigate, defend, or pay costs of defense." *Coca Cola Bottling Co. v. Columbia Cas. Ins. Co.*, 11 Cal. App. 4th 1176, 1183 (1992) (citation omitted). In other words, "the obligations of following form excess insurers are defined by the language of the underlying policies, except to the extent that there is a conflict between the two policies, in which case, absent excess policy language to the contrary, the wording of the excess policy will control." *Haering v. Topa Ins. Co.*, 244 Cal. App. 4th 725, 734 (2016) (citation omitted). However, "limits of liability included in an underlying insurance policy are generally not incorporated into excess insurance policies solely through follows form clauses." *Starr Indem. & Liab. Co. v. Belger*, No. 5:15-CV-02566-SVW-DTB, 2016 WL 7646996, at *5 (C.D. Cal. Dec. 13, 2016).

The Court agrees with RCBO that it cannot determine at this stage the meaning of the Continental policies without the actual policy language or secondary proof. Although it appears more likely than not that the Continental policies are indeed follow form policies, the mere fact that the policies "follow form" does not mean that they necessarily contain the same limits-of-liability language as the Allianz policies. The evidence before the Court is inconclusive. The evidence of the 1980-1981 Continental policy attached to the FAC includes a Declarations page stating the per occurrence and aggregate limits of the policy, but it does not include any follow-form endorsement page or limits-of-liability provisions. *See* ECF 9-10. There is no evidence of the 1979-1980 Continental policy attached to the pleadings. Although RCBO tacitly recognizes that the aggregate limits provision found in the Allianz policies is "likely [to be] found" in the Continental policies, FAC ¶ 64, this is not a certainty based on the evidence before the Court. Interpretation of the Continental policies is best resolved after the parties have conducted discovery. At the dismissal stage, however, the Court must take all well-pleaded facts in the light most favorable to the plaintiff. *See Twombly*, 550 U.S. at 555. In the absence of actual policy

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-09612-MRA-ADS | Date | September 25, 2025 |
| Title | *The Roman Catholic Bishop of Orange v. Allianz Underwriters Ins. Co. et al.* | | |

language to the contrary, the Court must take as true RCBO's allegation that "[t]here is no general aggregate limit in the Continental Excess Policies applicable to general liability claims." *See* FAC ¶ 49; *see also Twombly*, 550 U.S. at 555.

Accordingly, the Court **DENIES** Continental's Motion to Dismiss.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Allianz's Motion to Dismiss without leave to amend and **DENIES** Continental's Motion to Dismiss.

**IT IS SO ORDERED.**

- : -

Initials of Deputy Clerk mku